## BALL v. GREYHOUND VANS, Inc.
### No. 1306.

Court of Appeal of Louisiana. First Circuit.
May 8, 1934.

Ellis, Ellis & Ellis, of Amite, and Cahn & Cahn, of New Orleans, for appellant.

Reid & Reid, of Hammond, and St. Clair Adams and St. Clair Adams, Jr., both of New Orleans, for appellee.

LE BLANC, Judge.

Plaintiff claims damages for personal injuries which he suffered from the turning over of an auto he was driving northward towards Amite, La.

The accident occurred near Shiloh Station on the highway which runs north and south through the parish of Tangipahoa.

The Greyhound van or truck, which plaintiff alleges crowded him off the highway, was driven by Mr. S. H. Adams, and was coming southward towards Independence, while plaintiff was going in the opposite direction, as before stated.

Plaintiff alleges that Mr. Adams, the truck driver, failed to pull to his right when coming towards his auto as he should have done, held to the center of the highway, thus forcing him, in order to avoid a head-on collision, to drive his car into the ditch on his right side; that to get out of the ditch he put on more gas, causing his auto to run clean across the highway or west side thereof, where it turned over, resulting in the damages complained of.

Plaintiff testifies that the truck was coming on its side of the road but when about forty or fifty feet from him suddenly started to go in the middle of the road, and that to avoid a collision he took to his right side of the highway, ran into the ditch, his car "began to turn over"; that he stepped on the gas and turned it to the other side, where the car "turned over." In explanation of what occurred, as testified to by him, plaintiff said, in referring to the driver of the truck: "I imagine he fell to sleep."

This accident occurred at about the noon hour on an open highway without intervening obstacles or obstructions, and it is very improbable that the driver of this truck, who plaintiff says was coming on his right side of the road, should have suddenly darted across to the middle of that highway unless he had instantly fallen asleep, which is almost unbelievable and of which there is no proof whatsoever.

Plaintiff, in further describing the accident, on being asked if he had not put on the gas what would have happened, answered: "I would have turned over on the side where the water is. I don't think they would have taken me out alive."

The proof is that there was no water on that side of the highway. It may be that he had so imagined, as he had that the truck driver had fallen asleep.

The testimony of the plaintiff is that, as he passed the van, he put his head out of the window of his car and looked back, then went over to the west side of the highway, where his car was overturned.

Miss Eunice Lee of Roseland testifies she was traveling southward towards Independence; that the truck passed ahead of her car and kept to the center of the highway. In testifying to what occurred, she says: "I saw the car coming before the truck passed me, then when the truck passed me the accident had happened."

The accident to have so happened when the truck passed her is rather difficult to understand. Being asked if she saw the car and the van pass each other, she says: "They didn't pass by each other." This testimony is destructive of the complaint, as plaintiff claims that, on being crowded off the roadway, he passed beyond the truck, and that his auto was overturned on the west side of the highway.

She said once or twice that she did not know what happened, and this statement we believe is true. She also testified, that she went to the assistance of plaintiff when he was hurt and near the ditch had washed his face and of which she had reminded plaintiff on a visit at his store in New Orleans.

Several witnesses who went to the scene of the accident immediately after its occurrence testified they had not seen this lady wash plaintiff's face, one saying she had not gotten out of her car.

Evidently the trial judge did not put much value to such testimony.

Mr. Varnado, another witness for plaintiff, testified to the accident. He says he was driving behind the plaintiff and saw when he was crowded off the highway, causing plaintiff to drive to his right and then across the highway to his left, thus bringing about the accident.

Mr. Williams, express agent at Independence, witness for defendant in the case, is very positive that he was driving behind plaintiff on that occasion and that there was no car between his auto and plaintiff's car; hence, according to the evidence of Mr. Williams, Mr. Varnado was not behind plaintiff's car at that time.

According to the testimony of Martin, a negro, who was near the highway at the time, working in his field, and who went immediately to the scene, Mr. Williams was the first man to get there.

And so is the testimony of Mr. McMichael who lived near by and says that he got there at about the same time "with Mr. Williams."

The testimony of Mrs. McMichael is that, when she reached the scene, her husband was there and so was Mr. Williams' car, and nowhere does she intimate that Mr. Varnado was present, who, it seems, came about five minutes after.

With this character of evidence, it is apparent that Mr. Varnado's statement as to what occurred was not taken up seriously by the court.

Martin, a negro, says he was working in his "tater patch" on the west side of the highway, near the fence, and saw the truck and plaintiff's car when they approached each

other. His testimony is that the truck was on its right or west side of the road as the auto turned to its right on the east side of the highway. As he was on the west side, he was in a position to see that the truck was then where it was proper for it to be. His evidence is that, as plaintiff passed to the back of the truck, he looked backward towards the truck; that his auto ran westward across the road and toppled over in the ditch on the west side of the roadway.

It will be noted that plaintiff testified, as hereinabove stated, that, as he passed the truck, he looked backward, which shows that Martin testified to what had occurred at that moment, as he swore to the same fact in testifying to what had happened. The logical explanation of this accident is that plaintiff was not crowded off the road by the truck running in the middle of the highway, but that, as he passed the truck, he was driving too fast or for some cause or other lost control of his car and ran across the highway into the ditch, and which was the proximate cause of the accident and to which defendant did not in any way contribute.

No doubt, the lower court arrived at that conclusion and rejected the demand, in which we find no error.

Judgment affirmed.